**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BRENDON BRYANT** **CIVIL ACTION NO.**

**VERSUS** **19-11-EWD (CONSENT)**

**COMMISSIONER OF SOCIAL SECURITY**

**RULING AND ORDER**

Brendon Bryant ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Plaintiff has filed a Memorandum in Support of Appeal[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the court **AFFIRMS**[5] the Commissioner's decision and **DISMISSES** Plaintiff's appeal.

## I. Procedural History

Plaintiff was 50 years old at the time of the administrative law judge's ("ALJ") decision.[6] He attended school until the ninth grade but obtained his GED in 1986,[7] then completed cosmetology training at John Jay Beauty College in 1988.[8] Thereafter, Plaintiff was employed a food/pizza delivery driver from 1996 through June 2016 (*i.e.*, over 20 years), except for a six

---

[1] AR pp. 239-245 (DIB application) and AR pp. 246-251 (SSI application). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)]."

[2] R. Doc. 21.

[3] R. Doc. 23.

[4] R. Doc. 24.

[5] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c), R. Doc. 8, and on March 22, 2019, an Order of Reference was issued referring this matter "for the conduct of all further proceedings and the entry of judgment…." R. Doc. 9.

[6] AR pp. 52-70.

[7] AR p. 274. *See also* R. Doc. 21, p. 2 (Plaintiff explaining his educational history and noting that he "dropped out after the 9th grade [because he] was constantly bullied by the other students.").

[8] AR p. 274.

month period in late 2009 and early 2010 where Plaintiff worked as a security guard for New Orleans Private Patrol.[9] Plaintiff claimed he became disabled and unable to work as of June 26, 2016, and he protectively filed an application for DIB benefits on July 5, 2016 and an application for SSI on July 26, 2016[10] due to physical and psychological conditions.[11] Plaintiff's claim was initially denied on November 14, 2016.[12] A hearing was then held before the ALJ at Plaintiff's request on April 17, 2018 during which Plaintiff, represented by counsel, testified.[13]

On June 19, 2018, the ALJ issued a notice of unfavorable decision.[14] Plaintiff requested review by the Appeals Council,[15] and on November 8, 2018, the Appeals Council denied Plaintiff's request for review.[16] On January 8, 2019, Plaintiff filed this Complaint.[17] Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[18]

## II.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record

---

[9] AR p. 275 (Disability Report – Adult Form, dated July 26, 2016); AR pp. 298-305 (Plaintiff's Work History Report).
[10] AR pp. 239-245 (DIB application), AR pp. 246-251 (SSI application). Although Plaintiff claims, and the ALJ's decision states, that Plaintiff filed applications for benefits on June 30, 2016, the application for DIB is dated July 5, 2016 and the application for SSI is dated July 26, 2016. *See, respectively*, AR pp. 239-245 and AR pp. 246-251.
[11] *See* AR p. 273 (Adult Disability Report listing disabling medical conditions of "diabetes mellittus, type 2; acromioclavicular joint arthritis; CAD (coronary artery disease); hyper tension; old MI (myocardial infarction); intermittent palpitations; depression; ventricular tachycardia (paroxysmal); anxiety; degenerative disc disease"); AR pp. 122-125, 127-130 (Plaintiff testifying at the April 17, 2018 hearing that the following issues caused him to leave his job: "fatigue and the physical part," his "knees and [] back," "arthritis" causing pain in his "knees, back, and neck," "ICD [defibrillator] surgery…[due to] fast heartbeats, Afib," "irregular heartbeats," "obstructive sleep apnea," "depression, stress and anxiety," an "hypertension.").
[12] AR pp. 144-171.
[13] AR pp. 116-143.
[14] AR pp. 52-70.
[15] AR Pp. 237-238.
[16] AR pp. 1-4.
[17] R. Doc. 1. On May 29, 2019, Plaintiff filed an Amended Complaint, which appears to be identical to his original Complaint. *See* R. Doc. 13.
[18] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[19] If the Commissioner fails to apply the correct legal standards, or to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[20]

## III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[21] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[22] In this five-step sequence the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[23]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[24] If the claimant is successful at the first four steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that the claimant is capable of performing other work.[25] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[26]

---

[19] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[20] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).
[21] 20 C.F.R. §§ 404.1505; 416.905.
[22] 20 C.F.R. §§ 404.1520; 416.920.
[23] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[24] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[25] 20 C.F.R. § 404.1520(g)(1).
[26] *Muse*, 925 F.2d at 789.

Here, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020 and had not engaged in substantial gainful activity since the alleged onset date—June 29, 2016.[27] At step two, the ALJ determined that Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, obesity, coronary artery disease with history of multiple stents, ventricular tachycardia, status-post cardiac defibrillator in situ, premature ventricular contractions, status-post ablation, and degenerative disc disease of the lumbar spine.[28] With respect to references in the record regarding seizures, severe obstructive sleep apnea, and arthritis, the ALJ explained that there is "no evidence of additional limitations because of these impairments" and "[b]ased on the record evidence…these conditions have no more than a minimal effect on the claimant's ability to perform basic work-related activities and hence are not severe impairments."[29] At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."[30] The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional constraints. Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday. He must avoid all exposure to hazards in the workplace. He is able to understand, remember, and carry on work that is simple, routine, and

[27] AR p. 57.

[28] AR pp. 57-58.

[29] AR p. 58. Regarding seizures, the ALJ explained that Plaintiff "has a history of childhood seizure disorder" and saw "Neurology on August 12, 2016, following a video taken by his wife of August 5, 2016, which showed him asleep, and suddenly shaking," Plaintiff was placed on a "six-month regimen of Keppra for seizure prevention" and his medical records show that his "seizure disorder is controlled with medication." *Id*. Regarding sleep apnea, Plaintiff treats it with CPAP, although he "does not use it too much because it gives his panic attacks." *Id*. The ALJ explained (a) that the "objective medical record does not support the [Plaintiff's] report of panic attacks secondary to CPAP" and (b) that there is "no evidence" that Plaintiff's "sleep apnea causes more than minimal limitations in his ability to function and is therefore non-severe." *Id*. Finally, regarding Plaintiff's alleged arthritis and his inability to "sit 'too long' due to arthritis in his knees, back, and neck," the ALJ explained that Plaintiff "does not have treatment for arthritis." *Id*.

[30] AR pp. 59-60.

> repetitive that involves simple work related judgments and is able to remain on task and pace and persist at simple, routine, and repetitive work.[31]

Based on Plaintiff's RFC, age, education, and employment history, and based on the testimony of a vocational expert ("VE"),[32] the ALJ determined that Plaintiff "is capable of performing past relevant work as a Food Deliverer, DOT No. 230.663-010, light exertional work, unskilled (SVP 2)" because "[t]his work does not require performance of work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965)."[33] Accordingly, at step four, the ALJ found that Plaintiff was not disabled from June 29, 2016 through June 19, 2018 (the date of the ALJ's decisions).[34]

## IV. Plaintiff's Allegations of Error

Plaintiff did not object to the ALJ's findings at steps one, two, three, or four of the disability analysis. Instead, Plaintiff's briefing on appeal focuses on three things.[35] First, Plaintiff, who is no longer represented by counsel after being represented before the ALJ and during the Appeals Council action, contends that his attorney did a "poor job" of representing him because there was "little interaction between [Plaintiff's] attorney with the ALJ, and the expert witness" and Plaintiff was not "properly prepared" for the April 17, 2018 hearing.[36] Second, Plaintiff asks the Court to consider medical and educational records, some from many years ago and some post-decision date, as well as an affidavit of Plaintiff's father, Joseph Bryant, none of which are in the administrative

---

[31] AR p. 61.

[32] AR pp. 140-142. The VE, Thomas Muenier, testified at Plaintiff's ALJ hearing. The VE classified Plaintiff's past work as "Food Deliverer which is light, unskilled, SVP 2. The DOT is 230.663-010." *Id*. Meunier also testified that Plaintiff's past work included work as a Security Guard, which is "light, semiskilled, SVP 3. The DOT is 372.667-034." *Id*. Further, in response to a question from the ALJ asking the VE to assume Plaintiff had the above RFC, the VE testified that Plaintiff "would be able to do the Pizza Deliverer." *Id*. at pp. 140-141.

[33] AR p. 65.

[34] AR pp. 65-66.

[35] *See, generally*, R. Doc. 21.

[36] R. Doc. 21, pp. 1-2. For his appeal, Plaintiff is being helped by his father, who "was a Maritime Casualty Insurance Adjuster for 44 years and after retirement supplemented his income by delivering pizza for Dominos for 15 years…[and is] familiar with the physical requirements of delivering pizza." *Id*. at p. 4.

record.[37] Third, Plaintiff argues that "the testimony of Mr. Thomas Meunier, Vocational Expert was not correct" because, in Plaintiff's experience as a pizza deliverer, the duties of a pizza driver are not consistent with the Dictionary of Occupational Titles, contrary to the VE's testimony.[38]

## V. Law and Analysis

Review of the administrative record as a whole and the analysis below demonstrates that Plaintiff's claims of error are without merit and that substantial evidence supports the final decision of the Commissioner.

### A. The Court Does Not Have Jurisdiction to Consider Plaintiff's Complaints About His Lawyer

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[39] Plaintiff's complaints about his lawyer's performance at the April 17, 2018 hearing, as well as his comments about being nervous or unprepared for the hearing, are not relevant to these inquiries and are not part of the administrative record. As such, they have not been considered by the Court

Further, to the extent Plaintiff is attempting to assert a legal malpractice claim under Louisiana state law against his former attorney, this claim will be dismissed on the Court's own motion for lack of subject matter jurisdiction.[40] This Court has subject matter jurisdiction over

---

[37] R. Doc. 21, pp. 3-4; R. Doc. 21-1; R. Doc. 21-2; R. Doc. 24-1.

[38] R. Doc. 21, pp. 3-4.

[39] *See* n.19, *supra*. *See Sibley v. Berryhill*, No. 18-874, 2020 WL 1536404, at *3 (M.D. La. Mar. 31, 2020).

[40] *See Raffinee v. Commissioner of Social Sec.*, 367 Fed. App'x. 379 (3rd Cir. 2010) (affirming district court's *sua sponte* dismissal of plaintiff's "complaint for legal malpractice" against the attorneys who represented her in her claim for DIB and SSI benefits because "the District Court lacked subject matter jurisdiction to consider her complaint against her attorneys under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity)."). *See also Powell v. Astrue*, No. 13-171, 2013 WL 1155483, at *2-4 (D. Colo. Mar. 19, 2013) (severing plaintiff's appeal of an ALJ decision under 42 U.S.C. § 405(g) from his legal malpractice/conspiracy claims against his former attorney because "an appeal of a social security determination involves an entirely different set of laws, procedures and standards that proving the claims of legal malpractice or conspiracy which are based on state common law" and remanding it to state court for lack of subject matter jurisdiction).

"civil actions arising under the Constitution, laws, or treatises of the United States,"[41] and over civil actions where the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the parties are completely diverse (*i.e.*, all plaintiffs are citizens of a different state than all defendants).[42] The burden of establishing federal subject matter jurisdiction is on the party asserting it (here, Plaintiff).[43] A court may raise on its own at any time the issue of whether subject matter jurisdiction exists.[44]

As to his complaint about his former lawyer's performance, Plaintiff does not assert a federal claim. Neither has he adequately alleged his citizenship or the citizenship of his former attorney, although both could be Louisiana citizens based on the administrative record,[45] nor shown that the $75,000 amount in controversy is satisfied. To the extent Plaintiff would ask the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the claim against his former lawyer, the appeal of the social security decision involves an entirely different set of laws and facts from a claim of legal malpractice based on state law. Accordingly, the legal malpractice claim is not so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy such that supplemental jurisdiction is not applicable.

"A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction."[46] "A district court can dismiss an action *sua sponte* for lack of

---

[41] 28 U.S.C. § 1331.

[42] 28 U.S.C. § 1332.

[43] *Willoughby v. United States ex rel. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

[44] *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182, n. 5 (5th Cir. 2005).

[45] *See* AR p. 12 (showing that Plaintiff's former attorneys practices law out of an office in New Orleans, Louisiana) and AR p. 52 (listing Plaintiff's address in Walker, Louisiana).

[46] *Edwards v. Jackson Hinds Comprehensive Health Center*, No. 17-972, 2018 WL 3653761 (S.D. Miss. June 11, 2018), at *1 (*quoting Nixon v. Goldman Sachs Mortg. Corp.*, No. 16-597, 2016 WL 3763425, at **2–3 (N.D. Tex. July 14, 2016) (*citing* 28 U.S.C. §§ 1331, 1332); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). *See also McKendall v. U.S. Army Corps of Engineers*, No. 15-2631, 2016 WL 3218842, at *1 (E.D. La. June 10, 2016) ("The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.") (*citing Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

federal subject matter jurisdiction…even where the defendant makes no responsive pleadings and does not move to dismiss for want of subject-matter jurisdiction."[47] Because Plaintiff has not met his burden of establishing that this Court has federal subject matter jurisdiction as to his purported claim for legal malpractice under Louisiana law, that claim will be dismissed without prejudice.

**B. Consideration of Evidence Outside the Administrative Record**

The role of the district court, as an appellate body here, is to determine (1) whether there is substantial evidence to support the ALJ's decision and (2) whether the ALJ applied the correct legal standards.[48] In making this determination, the district court is "constrained by the record which was available to the ALJ."[49] "It is not the district court's 'job' to examine new evidence of disability—evidence not provided to the ALJ or Appeals Council—or to 'find issues of fact.'"[50] Ultimately, the district court "must give careful scrutiny to the whole record to assure that there is a sound foundation for the ALJ's findings, and that the conclusion is rational."[51]

Although "a district court cannot consider new evidence in determining whether substantial evidence supported the ALJ's decision, it may nonetheless review new evidence to determine if a remand to the Commissioner is appropriate."[52] To warrant remand, new evidence must be "material," and the plaintiff must demonstrate "good cause" for not presenting the evidence in the original proceeding."[53] Additionally the new evidence must not be merely "cumulative of what is

[47] *Dickens v. TASB Risk Management*, 17-00216, 2018 WL 6184804, at *1 (W.D. Tex. Nov. 21, 2018). *See also Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-814, 2017 WL 1113326, at *2 (M.D. La. March 23, 2017) ("The Court may dismiss an action *sua sponte* if it 'determines at any time that it lacks subject-matter jurisdiction.'") (*citing* Fed. R. Civ. P. 12(h)(3)).
[48] *See* n.19, *supra*. *See also Powers v. Astrue*, No. 12-448, 2013 WL 5522679, at *1 (M.D. La. Oct. 3, 2013).
[49] *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).
[50] *Powers*, 2013 WL 5522679, at *1 (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1987)). *See also* 42 U.S.C. § 405(g) (a reviewing court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner"); *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987) ("We review on the record made before the ALJ. The courts may not take new evidence…").
[51] *Powers*, 2013 WL 5522679, at *1.
[52] *Powers*, 2013 WL 5522679, at *2. *See also Ripley v. Charter*, 67 F.3d 552, 555 (5th Cir. 1995) ("We review new evidence only to determine if a remand is appropriate.").
[53] *Id*. (citing *Ripley*, 67 F.3d at 555 and 42 U.S.C. § 405(g)).

already in the record."[54] Material evidence "relates to the time period for which benefits were denied—meaning it does not concern a subsequent disability or the deterioration of a previously non-disabling condition."[55] Lastly, new evidence is material only "if there exists a reasonable probability that it would have changed the outcome of the decision had it been before the ALJ."[56]

Here, Plaintiff asks the Court to consider (1) medical and educational records pertaining to "[his] traumatic birth, subsequent onset of epilepsy, and special education," (2) "memorandum copies of the most recent medical documents contained in his chart from Ochsner" and therapy records from the "Post Traumatic Institute (PTI)," and (3) an affidavit of his father, Joseph Bryant, regarding the job duties of a food/pizza deliverer.[57] Plaintiff notes that most of this information "was not put in the record at the time of the ALJ hearing because it was not available in the form [he is] now presenting [it]," but he "trust[s] that the additional documentation provided at this time will better support the referenced medical evidence."[58] The Commissioner argues that the "15 pages of materials, including old medical and school records from the 70's and 80's, new medical records from a year after the ALJ's decision showing 'recent development,' and an affidavit from [Plaintiff's] father" should not be considered because they are "cumulative, irrelevant, or immaterial."[59]

The Commissioner is correct. The "new" evidence Plaintiff asks the Court to consider is not material, because it does not relate to the time period for which benefits were denied and/or it concerns a subsequent disability or the deterioration of a previous non-disabling one and/or it is cumulative with other information already in the record. For example, Plaintiff asks the Court to

---

[54] *Id.* (quoting *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)).
[55] *Id. See also, e.g.*, *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).
[56] *Id.*
[57] R. Doc. 21, pp. 2-4; R. Doc. 21-1; R. Doc. 21-2. *See also* R. Doc. 24, pp. 1-2; R. Doc. 24-1.
[58] R. Doc. 24-1, pp. 2-3.
[59] R. Doc. 23, pp. 7-10. Plaintiff attached three additional pages of medically related documents to his reply. *See* R. Doc. 24-1. The documents appear to be dated October and November 2019, well over one year after the ALJ's decision. *Id.*

consider the results of a September 23, 2019 x-ray, which Plaintiff claims is a "recent development" showing he might now be a candidate for back surgery.[60] At most, the September 23, 2019 x-ray shows a deterioration of Plaintiff's condition or impairment over one year after the ALJ's decision date.[61] It is not material to whether substantial evidence supports the ALJ's determination in June 2018. Next, the "new" evidence relating to Plaintiff's early medical and educational history is cumulative of what is already in the record.[62] Finally, the affidavit from Plaintiff's father is also not material, as it is cumulative of Plaintiff's testimony at the ALJ hearing.

The September 23, 2019 x-ray result, as well as Plaintiff's health summary, early medical and educational records, and Plaintiff's father's affidavit, do not constitute new and material evidence because they do not relate to the time period for which Plaintiff was denied benefits—*i.e.*, either they are dated after the ALJ's decision, such that they concern a subsequent disability or the deterioration of a previous non-disabling one, or they are cumulative of evidence already in the administrative record. Further, even if Plaintiff had included these documents in the administrative record, there is not a reasonable probability that the information would have changed the outcome of the decision had it been before the ALJ.[63] For these reasons, Plaintiff's

---

[60] *See* R. Doc. 21, p. 3; R. Doc. 21-1, p. 13.

[61] *See* R. Doc. 21-1, p. 13 (noting "low back pain,>6 [weeks] conservative [treatment]…surgical candidate" but also noting "[u]pper lumbar spine mild degenerative disc height loss present…"). *See also id.* at pp. 1-7 (Plaintiff's health summary containing references to pre-decision medical information, such as diabetes mellitus type 2, hypertension, degenerative disc disease, CAD, cardiac defibrillator, etc., already in the record (*i.e.*, cumulative), as well as new, post-decision medical information, such as hyperlipidemia, diverticulitis, generalized abdominal tenderness without rebound tenderness, rotator cuff impingement syndrome of left shoulder, renal mass, and lymphadenopathy, all of which were added since February 4, 2019—*i.e.*, several months to nearly a year after the ALJ's decision. As such, the health summary is immaterial, and it cannot support remand or an award of benefits.

[62] *Compare* R. Doc. 21-1, pp. 8-12 (discussing Plaintiff's "traumatic birth," "arthritic symptoms," and "epilepsy" diagnosis at three years old, as well as Plaintiff's potential need to be evaluated for "special class") *with* AR p. 130 (Plaintiff testifying, "Well, I mean I don't really have arthritis treatment for arthritis, but I mean I have arthritis. I've had it since I was 14 years old and it affects my day to day life…"); AR pp. 282-289 (Function Report – Adult – Third Party completed by Plaintiff's mother, Joyce Simoneaux, on September 9, 2016, explaining (a) that Plaintiff "had epilepsy as a child which has returned since disability," (b) that Plaintiff was "diagnosed at 4 with epilepsy and on medication until 14 [and] at 15 had salmonella resulting in reactive arthritis…); AR p. 274 (Plaintiff's Disability Report – Adult – Form SSA-3368, noting Plaintiff attended "special education" classes).

[63] *See Powers*, 2013 WL 5522679, at *2-3. Indeed, Plaintiff submitted new evidence to the Appeals Council, including treatment records from Ochsner Health dated April 27, 2018 to June 8, 2018 (20 pages), which the Appeals Council "did not exhibit" because "this evidence does not show a reasonable probability that it would change the outcome of the decision." AR pp. 1-4. Likewise, Plaintiff also submitted new evidence to the Appeals Council, consisting of (a)

"new" evidence cannot support a remand of this action to the Commissioner or an award of benefits.[64]

**C. Substantial Evidence Supports the VE's Opinion and the ALJ's Decision**

Plaintiff's final complaint is that the VE's testimony about "duties of a pizza driver being consistent with the Dictionary of Occupational Titles was not correct."[65] The premise underlying Plaintiff's complaint appears to be that the VE's opinion cannot be correct because, unlike Plaintiff, the VE "[obviously] has never made pizza deliveries for a large pizza delivery company."[66] In his brief, Plaintiff explains his view on what the duties of his job as a pizza deliverer were[67] and argues that this "strongly contradicts the conclusions of the [VE and the ALJ]."[68]

Here, the ALJ solicited the testimony of a VE.[69] The VE testified that Plaintiff's past work included work as a "Food Deliver," which is DOT 230.663-010. He classified this work as "light, unskilled, SVP 2."[70] As is usual in such cases, the ALJ posed hypothetical questions to the VE,

---

treatment records from Ochsner Health dated July 5, 2018 to August 23, 2018 (26 pages) and (b) a supplemental residual function capacity questionnaire from Ashley Daniel, LCSW, dated September 6, 2018 (3 Pages), which the Appeals Council found "d[id] not relate to the period at issue…[and] d[id] not affect the decision about whether [plaintiff] was disabled beginning on or before June 19, 2018." *Id*.

[64] *See*, *e.g.*, *Carey v. Apfel*, 230 F.3d 131, n.1 (5th Cir. 2000) (agreeing with Appeals counsel that letter drafted by Plaintiff's physician after the ALJ decision date "did not present any basis for reversing the ALJ's decision" because it was of "minimal" probative weight" and "relate[d] to [Plaintiff's] current condition, rather than his condition in March of 1991 [*i.e.*, the alleged onset of Plaintiff's disability]."); *Bradley v. Bowen*, 809 F.2d 1054, 1057-58 (5th Cir. 1987) (finding that post-ALJ decision letter from plaintiff's doctor opining that plaintiff was "totally disabled and express[ing] doubt that she can be sufficiently rehabilitated to be able to engage in office employment" did not justify remand because (1) such letter was "cumulative, at best," and "unlikely…to have changed the outcome of the Secretary's decision," (2) plaintiff "[did] not attempt a showing of good cause, other than the fact that [the doctor's] letter is of recent origin, for the failure to incorporate this evidence into the prior administrative record," and (3) such letter "indicates, at most, that [plaintiff] was disabled in October 1986, more than three years after the alleged onset date of her disability, and therefore does not relate to the period for which disability benefits were sought.").

[65] R. Doc. 21, pp. 2-3 (cleaned up).

[66] R. Doc. 21, pp. 2-3.

[67] Plaintiff explains that he had to carry "large bags" of pizza weighing "up to 45lbs" at times; lift "boxes of sauce [weighing] over 40lbs" at times; carry "2 liters of soft drinks"; walk up "3 flights of stairs" to make deliveries; make "20 up to 40 deliveries" in a day; about one-third of which were after dark; drive up to "150 to 160 miles" on certain days; and get into and out of his vehicle "up to 80 or 160 times" during a day. R. Doc. 21, p. 3.

[68] *Id*.

[69] AR pp. 140-142.

[70] *Id*. The DOT defines "unskilled work" to mean "…work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing

asking him to address whether jobs existed that Plaintiff could do based on age, education and work experience, but subject to certain limitations.[71] After considering those factors, the VE testified that Plaintiff was still able to work as a food/pizza deliverer.[72] Based on this testimony, the ALJ determined at step four that Plaintiff was not disabled because Plaintiff is still capable of performing his past relevant work as a food deliverer.[73]

Although Plaintiff now argues that VE's opinion is not consistent with actual work as a pizza deliverer, based on Plaintiff's appreciation of his job duties, Plaintiff waived this argument by not raising it during the administrative hearing.[74] Moreover, even if this argument had not been waived, Plaintiff has not shown that there is an actual conflict, direct or implied, between the VE's testimony and the DOT. Under 20 C.F.R. § 404.1560(b)(2), 20 C.F.R. § 416.960(b), and relevant case law, "it is well-established that a determination of whether a claimant can do his or her past relevant work may rest on descriptions of past work as actually performed or as generally performed in the national economy."[75] In his work history report, Plaintiff listed his prior work as a pizza deliverer for Pizza Hut, Papa John's, and Domino's, and he explained his duties.[76] For each

---

materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the jobs in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968. Likewise, the DOT defines "light work" to mean work "involve[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing…To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities…" 20 C.F.R. § 416.967.

[71] *Id*. Such limitations included avoiding exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. *Id*. at p. 141.

[72] AR pp. 140-141.

[73] AR p. 65.

[74] *See James v. Colvin*, No. 16-470, 2017 WL 4185479, at *13 (M.D. La. Sept. 21, 2017). Plaintiff, who was represented at the hearing, did not question the VE about this alleged conflict during the hearing. "It is well settled in the Fifth Circuit that, "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous previsions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id.* (citing *Carey*, 230 F.3d at 146-47).

[74] *Id*.

[75] *Cicerco v. Colvin*, No. 12-279, 2014 WL 1689301, at *7 (M.D. La. April 28, 2014). *See also Alexander v. Astrue*, 412 Fed. App'x. 719 (5th Cir. 2011); *Cooper v. Barnhart*, 55 Fed. App'x. 716 (5th Cir. 2020); *Khawaja v. Shalala*, 20 F.3d 1170 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[76] AR pp. 298-306.

pizza delivery job listed, Plaintiff explained that in a given day he spent two hours walking, two hours standing, and two hours sitting.[77] Plaintiff also explained that the "heaviest weight lifted" was "20 lbs.," although he "frequently lifted less than 10 lbs."[78] Plaintiff further explained that he "lifted and carried" items "less than 50 feet."[79] The VE's testimony is consistent with Plaintiff's own statements about his duties and requirements as a pizza deliverer as provided in the work history report completed by Plaintiff. Accordingly, there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled at step four.

Notwithstanding the foregoing, Plaintiff also appears to ask this Court to reweigh the evidence in the administrative record and resolve any purported conflicts in the evidence in Plaintiff's favor.[80] However, "[c]onflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side."[81] "In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision."[82]

In her decision, the ALJ discusses, at length, Plaintiff's medical history, "all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," Plaintiff's subjective complaints, and his impairments—severe or otherwise.[83] This discussion takes into account Plaintiff's purported "difficulty getting in and

---

[77] *Id*. For the oldest delivery job, he explained that he would sit, stand, and walk for two to four hours each on a given day. *Id*. at p. 305.

[78] *Id*.

[79] *Id*.

[80] Notably, the Court has already addressed Plaintiff's main argument that his current description of his job duties and requirements is at odds with the VE's testimony and determined that there is no conflict.

[81] *See Breau v. Berryhill*, No. 17-413, 2018 WL 4402003, at *7 (M.D. La. Aug. 14, 2018). *See also Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *King v. Commissioner of Social Sec. Admin*., No. 12-752, 2014 WL 905207, at *2 (M.D. La. Mar. 7, 2014) (quoting *Selders*, 914 F.2d at 617)).

[82] *Breau*, 2018 WL 4402003, at *7 (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

[83] AR pp. 57-65

out of his car especially due to his knee and back," as well as the fact that Plaintiff's doctor told him to stop working until the surgery to implant the ICD (defibrillator)."[84] Further, she considers issues Plaintiff has had since installation of the ICD, including the addition of two stents and an ablation in 2018.[85] After considering Plaintiff's testimony and the evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."[86] But, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.[87] The ALJ explained those reasons, with specific citations to the record and Plaintiff's testimony, including (1) that Plaintiff "recovered well and in a relatively short time after having his defibrillator installed," (2) that "[r]outine follow-ups with the cardiologist show the [Plaintiff] was feeling better and had normal defibrillator function with no arrhythmias," (3) that Plaintiff's amiodaron daily dosage was decreased," (4) that, based on Plaintiff's testimony, his ablation procedure helped and he could tell this difference, (5) that, although the record shows that Plaintiff had preexisting mild lumbar degenerative disc disease in 2015, there are "little to no complaints during the relevant period" and "no significant functional limitations" were documented during physical examinations," and (6) the lack of "any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has greater limitations than those determined in this decision."[88] Based on the "totality of the medical evidence," the ALJ determined that Plaintiff's symptoms "do not wholly compromise the ability to function independently, appropriately, and effectively on a sustained basis" and "would not []

---

[84] *Id*. at p. 62.
[85] *Id*.
[86] *Id*. at p. 63.
[87] *Id*.
[88] *See id*. at pp. 63-65 and record cites therein. *See also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding that ALJ's decisions was supported by substantial evidence in the record where "no physician who examined [plaintiff] pronounced her disabled"); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (finding that substantial evidence supported ALJ's finding that plaintiff's subjective symptomology was not credible when no physician on record stated that plaintiff was physically disabled").

preclude [Plaintiff] from performing within the residual functional capacity."[89] The ALJ's citations to the record evidence constitute substantial evidence to support that decision.[90]

Further, as Defendant notes, Plaintiff's ability to work for years as a pizza deliverer despite numerous pre-existing medical conditions that he now claims are disabling support the ALJ's decision.[91] Plaintiff worked as a pizza deliverer for over twenty years until he says his "physical condition would no longer allow me to do the work that is required of a pizza driver"—*i.e.* June 29, 2016, the alleged onset date of his disability.[92] However, Plaintiff's medical records and testimony show that he was working despite numerous health conditions, which he now claims are disabling.[93] The record shows that Plaintiff was able to, and did, perform the requirements of his job as a pizza deliverer for years despite these conditions, which also supports the ALJ's decision.

---

[89] *Id*. at p. 65.

[90] The ALJ did propose a hypothetical to the VE, "if an individual such as claimant has the need to take breaks throughout the day to either lie down or just be off task and rest such that he's likely to miss 15% of the worktime, what would that do with his ability to do jobs identified or other work?'' To this hypothetical the VE responded that would "eliminate the possibility of maintaining competitive employment I think." AR p. 142. To the extent Plaintiff intends to raise as error that the RFC does not ultimately account for Plaintiff's limitations due to fatigue, the objective medical evidence is inconsistent on the prevalence of these complaints. *Compare* AR p. 941 (1/19/17 record "negative for fatigue"); AR p. 960 (5/26/17 record "negative for fatigue"), and AR p. 1013 (1/14/18 record "negative for weakness and malaise/fatigue") *with* AR p. 950 (4/27/17 record "feeling very fatigued…progressively worse over the last couple of months"), AR p. 982 (11/30/17 record "positive for malaise/fatigue"), AR p. 1006 (12/20/17 record "positive for fatigue"), AR p. 1020 (2/5/18 record "positive for malaise/fatigue"), and AR pp. 138-139 (Plaintiff testifying at the ALJ hearing that since his ablation, there has been "some improvement" in the way he and he "can tell the difference" but that he "still get[s] fatigued really easily."

[91] *See, e.g.*, *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding that ALJ's conclusion that plaintiff could perform a wide range of sedentary work was "supported by substantial evidence" because the "record reflects that [plaintiff] was able to, and did work for several years while suffering from ailments she now asserts are disabling."); *Fraga v. Bowen*, 810 F.2d 1296, 1305-06 and n.11 (5th Cir. 1987) (finding that evidence showing that plaintiff "was able to, and did," perform work despite pre-existing condition supported the ALJ's decision that plaintiff was not disabled by said condition).

[92] AR pp. 121-122; R. Doc. 21, p. 2.

[93] *See, e.g.*, AR pp. 125-126, 129-130, (testifying (a) that he had his "first heart attack [in 2003] when the right coronary artery was 100% blocked"; (b) that he had six stents placed in his heart—two in 2003 and four in 2010—prior to his alleged disability onset date; (c) that he has been seeing a therapist for depression and taking medication for his depression for "four to five years"; and (d) that he has had arthritis since he was fourteen years old); AR pp. 329 – 330 (a June 29, 2016 medical record from Ochsner Health listing Plaintiff's "problems" as of June 29 2016, along with the dates each issues was noted and resolved. The following "problems" have "noted" dates between 2013 and 2015: degenerative disc disease, CAD (coronary artery disease – chronic), S/P PTCA (percutaneous transluminal coronary angioplasty), old MI (myocardial infarction), colitis, hemorrhoids, obstructive sleep apnea, internal derangement of the right knee, shoulder pain, and acromioclavicular joint arthritis).

The VE's testimony, coupled with Plaintiff's testimony and work history report, and the objective medical evidence in the record shows that the ALJ's decision, that Plaintiff is not disabled because he can perform the job of food deliverer, is supported by substantial evidence.

## VI. Conclusion

The analysis above demonstrates that, as to the denial of Plaintiff's application for benefits, his claims of reversible error are without merit. Based on the record, considered as a whole, the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled.

Accordingly,

**IT IS ORDERED** that any claims asserted by Brendon Bryant related to alleged legal malpractice of his former attorney during the social security proceedings out of which this appeal arises are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying the application for disability insurance benefits and supplemental security income filed by Brendon Bryant is **AFFIRMED** and this action is **DISMISSED**.

Signed in Baton Rouge, Louisiana, on November 23, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**